RUSSELL A. HART
EVANGELO ARVENETES
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, MT  59101
Phone:  (406) 259-2459
Fax:  (406) 259-2569
russell_hart@fd.org
vann_arvenetes@fd.org
     Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>CHAD LEROY STONE,<br><br>Defendant. | **Case No. CR-22-93-BLG-SPW**<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR MISSING ELEMENT/FAILURE TO STATE AN OFFENES** |

COMES NOW the Defendant, through counsel, and offers the following Reply to the Government's Response.  (Doc. No. 38).

### ARGUMENT

The Indictment references "an order" which made Mr. Stone a prohibited person pursuant to 18 U.S.C. § 922(g)(8) and goes on to allege he was subject to that

1

order when firearms were discovered at his residence on July 23, 2021. By its Response, the Government revealed Mr. Stone was prohibited, in fact, by a combination of *two* orders that were issued three years apart, but which the Indictment holds out as the same "order" for purposes of 18 U.S.C. § 922(g)(8). One of those orders, issued in 2017 (the "2017 order"), followed a hearing. However, that order expired months before Mr. Stone's alleged offense. The second order (the "2020 order") was issued in 2020 – prior to the expiration of the first order – and covered the time of Chad's alleged offense under the Government's theory of its case. However, a hearing was not held before that order was issued, and it lacks the language §922(g)(8) explicitly requires a prohibiting order to bear.

The Government has clarified that those portions of the Indictment which do not match its evidence rest upon a novel legal theory: since Mr. Stone participated in a hearing prior to the district court's issuance the 2017 order, it is no impediment to the Government's present §922(g)(8) prosecution that another hearing wasn't held when Ms. Stone returned to court in 2020 with a fresh set of factual allegations against Mr. Stone, and obtained the order upon which the Indictment in this case is premised. Under the Government's theory, the hearing in 2017 was "a hearing" for purposes of §922(g)(8) because it literally preceded the district court's 2020 order in time. Under the Government's theory, it does not matter that the 2020 order was based upon a

2

distinct and separate set of factual allegations or that it occurred three years before the prohibiting order was issued.

For the reasons discussed herein and in Mr. Stone's Motion, the processes upon which this prosecution depends were so deficient – under Montana law and the procedural protections contemplated in §922(g)(8) – it requires pretrial intervention by this Court. The Government's admissions and its reliance upon the legal theory propounded in its Response necessitate the determination of certain questions of law pretrial.

I. **The November 2020 Order of Montana's Sixth Judicial District was distinct and separate from its 2017 Order. Ms. Stone's request which preceded that Order required the district court to hold a new hearing.**

In Montana, an appeal may only be taken from a "final judgment" in a civil proceeding. M. R. App. P. 6. "A final judgment _**conclusively**_ determines the rights of the parties and settles all claims in controversy in an action or proceeding, including any necessary determination of the amount of costs and attorney fees awarded or sanction imposed." M. R. Civ. P. 4(1)(a) (emphasis added). A party may appeal a final decision granting, dissolving, or refusing to grant or dissolve a petition for an order of protection in a civil case, pursuant to M. R. App. P. 6(3)(e). *In re Marriage of Stone*, 2019 MT 232N, at ¶12, 398 Mont. 443. The court must find the facts specifically and state its conclusions of law separately. M. R. Civ. P. 52(a)(1).

Failure by district court to state its findings and conclusions in an order granting or denying an order of protection renders the document incapable of appellate review and necessitates remand for entry of findings and conclusions as required by M. R.Civ P. 52(a). *Edelen v. Bonamarte*, 2007 MT 138, at ¶¶12-13, 337 Mont. 407, 162 P.3d 847.

Following appeal or after the time for appeal has expired, the only relief available from a civil judgment may be found at Rule 60 of the Montana Rules of Civil Procedure: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been [earlier] discovered . . .; (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. M. R. Civ. P. 60(b).

By its Response, the Government notes Mr. Stone appealed the district court's 2017 decision to the Montana Supreme Court and was denied relief. *Stone v. Stone*, 393 Mont. 538, 2018 MT 178N. The mere fact the Montana Supreme Court considered this appeal demonstrates the 2017 order of protection was a final order of a Montana Court which conclusively determined the rights of the parties as to the dispute litigated and could not simply be "extended". If there was any doubt

following Mr. Stone's first appeal, Montana Supreme Court removed it the following year when it heard Mr. Stone's second appeal, *In re Marriage of Stone*, 2019 MT 232N, 398 Mont. 443, 459 P.3d 214:

> "Chad's seventh and final assertion of error is an attempt to relitigate the District Court's November 2017 order of protection barring him from contact with Lindsey. However, he has already had full and fair opportunity to litigate all issues regarding the 2017 protective order before the District Court and on appeal of that matter. *See Stone I*, *supra*. As with his first six assertions of error, Chad has not shown that he is entitled to relief under any of the narrow grounds specified in M. R. Civ. P. 60(b)."

*In re Marriage of Stone*, at ¶14.

Mr. and Ms. Stone had their hearing in 2017. Ms. Stone was granted a 3-year order of protection. Mr. Stone appealed. He lost. He appealed again and was told by the Montana Supreme Court that he'd already had his chance, he'd been required to raise a valid claim under Rule 60 to obtain relief, and he had not met his burden.

The district court's 2017 and 2020 orders were not the same "order" as held out in the Indictment and argued by the Government in its Response. Ms. Stone became dissatisfied with the 2017 order shortly before it expired, and her divorce attorney filed a motion seeking to "extend" it. This is not a remedy provided for in M. R. Civ. P. 60(b). She prevailed, nevertheless. The record demonstrates the 2020 order was based upon facts that were not considered at any hearing.

Montana's laws demonstrate the 2017 order was a "final judgment", and the Supreme Court has held relief can only be obtained *from that specific order* under the "narrow grounds" of M. R. Civ. P. 60(b).  Thus, the district court did one of two things when it issued the November 9, 2020 order upon which the Indictment is premised: (1) it treated Ms. Stone's motion as a petition for an order of protection under Mont. Code Ann. § 40-15-201 and issued a new order without holding a hearing in violation of that statute and §922(g)(8), or (2) it provided Ms. Stone with relief from its 2017 judgment in violation of M. R. Civ. P. 60(b), doing what the Montana Supreme Court had already said could not be done when it came to that specific order. While neither theory comports with the hearing requirement of §922(g)(8), the Government's Response favors the latter.

Given the lack of any findings, the district court's assertion that the matter was decided upon review only of a motion filed by Chad's ex-wife in their divorce proceedings concerning events that followed the 2017 order, and the Montana law cited above, the 2020 order is not an "order" as that term is used in Montana law or §922(g)(8).

//

//

## II. The hearing Mr. Stone attended in 2017 was not the "hearing" §922(g)(8) required the district court to hold before it issued its "order" in 2020.

It is unique that this Court reviews, in the 2017 order, a document which the Montana Supreme Court has specifically reviewed, confirmed, and commented upon the finality of twice. The district court issued an order for a term of 3 years in 2017, it was a "final order" under the laws of Montana, and the only relief available to the parties – if any existed – would be found at M. R. Civ. P. 60(b).

The district court did not hold Ms. Stone's request to that standard: it did not require her to seek relief from the judgment under the "narrow grounds" of Rule 60. It did not follow the procedure of Mont. Code Ann. §40-15-201, hold a hearing, issue a new order, and state its reasons as required by Montana law. The Montana Supreme Court published a roadmap for the district court to follow if it were to grant either party relief from that specific order. Instead, the district court spun a legal fiction that resulted in the 2020 order upon which no indictment should have been returned.

Ms. Stone's 2020 motion was either a new request for an order of protection, or it was an invitation for the district court to provide relief that was not available under the laws of Montana. Ms. Stone's 2020 request was based upon new facts, and it required a new hearing under any standard of due process. The Government's

7

evidence at trial will not reflect the facts alleged in the Indictment as any rational person would understand them.

> **III. The Government admits it was the 2020 order that prohibited Mr. Stone at the time of his offense, and that a hearing did not precede that order. That order did not explicitly, "by its terms", include a finding that he was a credible threat to any person, nor did it restrain Mr. Stone from any activity. These elements are missing from the Indictment in light of the Government's Response.**

The Government makes an extraordinary argument in its Response and candidly admits its theory: The Court now knows the Indictment references a hearing that took place three years before the "order" referenced immediately thereafter; that the 2017 hearing concerned a different set of factual allegations than the one presented to the district court before it issued its 2020 order; the previous allegations had been fully litigated on the merits in 2017; the final judgment survived two appeals to the Montana Supreme Court prior to issuance of the 2020 order; the district court stated its basis for the 2020 order being the allegations made in Ms. Stone's 2020 civil motion, not the facts from the 2017 hearing, and; the order alleged to have imposed prohibited status upon Mr. Stone at the time of his offense did not contain the explicit language required by §922(g)(8). In light of the Government's concessions, the Indictment no longer states an offense, if it ever did. *See e.g. United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986) (attorney's statement during oral argument constitutes a judicial admission).

The evidence the Government acknowledges it will present at trial is materially different from what the Indictment promised. The briefing in this matter has demonstrated the Indictment is not based on "an order" which "by its terms" restricts Mr. Stone in any manner that implicates §922(g)(8). Rather, it is based on "an order" that was issued in 2020 without a hearing, and which does not "by its terms" find that Mr. Stone represents a credible threat to any person, nor does it explicitly prohibit Mr. Stone from doing anything. The Indictment is missing those elements.

**IV.     This question is appropriate for pretrial review**

Rule 12(b) permits any defense "which is capable of determination without the trial of the general issue" to be raised by pretrial motion. *United States v. Shortt Accountancy Corp*, 785 F.2d 1448, 1452 (9th Cir. 1986). A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact. *Id*.

The Court can determine from the briefs that the Indictment does not state an offense. The order which purports to prohibit Mr. Stone from possessing firearms did not contain the explicit language required by §922(g)(8). The "hearing" referenced in the Indictment had no bearing in time or fact upon the "order" alleged to have made Mr. Stone a prohibited person at the time of his offense. The Government's concessions in this briefing to the points above demonstrate that a §922(g)(8) order

9

does not exist under any reasonable reading of the statute, and the Indictment no longer states an offense as it lacks certain elements.

Whether such an order exists, in this case, is a question of law rather than fact: the parties agree a hearing occurred in 2017 on a separate set of facts and that an allegedly prohibitive "order" was issued in 2020. Whether the 2017 hearing was sufficient to make the 2020 order an "order" "issued after a hearing" as required by §922(g)(8) does not require the resolution of any factual dispute.

Courts have also suggested that a predicate order for a § 922(g)(8) prosecution may be examined prior to trial if it is so "transparently invalid as to have only a frivolous pretense to validity." *US v. Hicks*, 389 F. 3d 514, 534 (5th Cir. 2004), cited by *United States v. Young*, 458 F.3d 998, 1000 (9th Cir. 2006); state court restraining order proceedings are "immaterial except to the extent that the federal statute explicitly requires certain procedural protections".

Section 922(g)(8) explicitly requires certain procedural protections: that a prohibiting order "follow" "a hearing". Given the Government's acknowledged theory of its evidence, Mr. Stone respectfully submits this Indictment presents a case where such pretrial inquiry is necessary if the Court does not first dismiss the Indictment on other grounds. The argument that the 2017 hearing served as a predicate to the 2020 order which purports to prohibit Mr. Stone from possessing

firearms defies any concept of due process, Montana law, §922(g)(8), and the basis stated by the Court for granting the 2020 order.

> V. **The Government's response highlights fatal flaws in the 2020 order that were not contemplated in Mr. Stone's Motion.**

The Government notes the Order of Protection issued by Montana's Sixth Judicial District on November 15, 2017 (Ex. 1, Doc. No. 38) was a "permanent order of protection". Upon review, the Government is correct. This is a term of art used throughout Montana's caselaw on this topic: once the court reviews a petition seeking an order of protection, it may issue a "temporary order of protection" which is valid for 20 days. Mont. Code Ann. § 40-15-201(4). Within that time, the court must conduct a hearing to "determine whether good cause exists for the temporary order of protection to be continued, amended, or made permanent". Mont. Code Ann. § 40-15-202(1). Montana's Supreme Court refers to a "permanent order of protection" as one granted following the hearing contemplated at Mont. Code Ann § 40-15-201(1), whether it is granted for the literal life-term of the respondent or for a specified period. The Montana Supreme Court used that phrase specific to the 2017 order in *Stone v. Stone*, at ¶12.

The portion of the Government's Response concerning this phrase illuminates questions addressed elsewhere in the briefing: first, following the 2017 hearing and order, did the district court have jurisdiction to simply "extend" a "permanent order of

protection" as the Government asserted without citing any authority? (Doc. No. 41 at pg. 14). The Montana Supreme Court has answered that question in the negative as it relates to this specific order. A permanent order of protection is a "final judgment" from which relief may be found only through the appeals process or the "narrow grounds" of M. R. Civ. P. 60(b). That did not happen.

Since the district court lacked that authority, did the 2020 order constitute a "permanent order of protection" in compliance with Mont. Code Ann. § 40-2-201 and §922(g)(8)? It did not: the 2020 order followed the final resolution of a separate controversy in 2017, and a separate hearing was required to determine whether the allegations raised by Ms. Stone in 2020 justified issuance of a new "permanent" order that would implicate §922(g)(8). The result was "an order" which the Indictment holds out as a §922(g)(8) prohibition as to Mr. Stone, but which does not contain the language §922(g)(8) requires and did not follow a hearing.

The Indictment in this matter cannot survive unless the two orders at issue are construed as a singular "order" in defiance of the record from the state court proceedings and Montana law. However, the Government's attempt to cast these separate orders as "an order" for purposes of §922(g)(8) exposes a more fundamental flaw: what legal effect did it have when the district court issued a one-paragraph order on November 9, 2020 which simply stated "the order of protection is hereby

permanent, unless amended or vacated by Order of the Court"? (Ex. 2, Doc. No. 38). As the Government clarified, the initial "temporary order" became "permanent" as Montana uses that term when the district court issued its 2017 order.

When the Government presented this evidence to the Grand Jury, it clearly had a different understanding of the word "permanent" than the one it asserts in its Response. The 2020 order does not present a term of months or years of restriction against Mr. Stone: there is no language from which the Grand Jury could have determined Mr. Stone was prohibited on July 23, 2021, aside from the 2020 order's use of the word "permanent". Now, the Government appears to recognize the term "permanent" – in the context of a Montana order of protection – is a term of art with no substantive bearing on the time-period of an order's enforceability.

The theory of indictment itself would necessitate a not-guilty verdict if the factfinder examined the evidence alongside the arguments in the Government's Response.

## **CONCLUSION**

When it presented this Court with its Indictment, the Government said Mr. Stone had possessed a firearm while he was subject to "an order" which prohibited him from doing so pursuant to §922(g)(8). It told the Court that order had been issued following "a hearing" of which Mr. Stone had notice and an opportunity to participate.

It told the Court that order contained the explicit language required by §922(g)(8). The Government now asserts the 2020 order is what caused Mr. Stone to be prohibited at the time of his offense and recognizes a second hearing was not held. It argues the hearing on the first order three years earlier was good enough for §922(g)(8). It argues that, for purposes of indicting Mr. Stone, "permanent" means "permanent", but for purposes of this briefing this Court should defer to the relatively benign meaning given to that term by Montana law in the context of orders of protection.

Even if the 2020 order was somehow valid under Montana law as an order of protection enforceable under the criminal laws of Montana, prohibited status under §922(g)(8) clearly requires a prohibiting order to flow from a hearing and could not have attached to this order. The United States has not cited any case favorable to its interpretation of the question whether the §922(g)(8) "hearing" must bear any relation in fact or time to the prohibiting order upon which a subsequent indictment is based.

Mr. Stone respectfully submits that §922(g)(8) and the basic principles of Due Process require precisely that.

RESPECTFULLY SUBMITTED December 19, 2022.

/s/ Russell A. Hart
RUSSELL A. HART
Assistant Federal Defender
Federal Defenders of Montana
   Counsel for Defendant

/s/ Evangelo Arvanetes
EVANGELO ARVANETES
Assistant Federal Defender
Federal Defenders of Montana
   Counsel for Defendant

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 7.1(d)(2) (as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 3,250 words. (Total number of words: 3,219 excluding tables and certificates).

DATED December 19, 2022.

/s/     Russell A. Hart
Assistant Federal Defender
Counsel for Defendant


/s/     Evangelo Arvanetes
Assistant Federal Defender
Counsel for Defendant

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on December 19, 2022, the foregoing document was served on the following persons by the following means:

1, 2   CM-EDF
\_\_\_   Hand Delivery
 3   Mail
\_\_\_   Overnight Delivery Service
\_\_\_   Fax
\_\_\_   E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. TIMOTHY A. TATARKA
   THOMAS GODFREY
   Assistant United States Attorney
   United States Attorney's Office
   2601 2nd Avenue North, Suite 3200
   Billings, MT 59101
       Counsel for the United States.

3. CHAD LEROY STONE
       Defendant

/s/ Russell A. Hart
RUSSELL A. HART
    Federal Defenders of Montana
        Counsel for Defendant

/s/ Evangelo Arvanetes
Assistant Federal Defender
Federal Defenders of Montana
        Counsel for Defendant